CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

Liaison Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW J. KORNECKI, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>AIRBUS SE, et al.,<br><br>                    Defendants. | No. 2:20-cv-10084-KM-JBC<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

4868-6583-2737.v4

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................1

II.  PROCEDURAL BACKGROUND ...................................................2

III.  TERMS OF THE SETTLEMENT ...................................................3

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS
WARRANTED ................................................................................5

    A.  The Standards for Reviewing a Proposed Settlement for
Preliminary Approval ............................................................5

    B.  Preliminary Approval of the Settlement Should Be Granted ...............8

        1.  Lead Plaintiff and Its Counsel Have Adequately
Represented the Class ..................................................8

        2.  The Proposed Settlement Is the Result of Good Faith
Arm's Length Negotiations ..........................................8

        3.  The Proposed Settlement Is Adequate in Light of the
Costs and Risks of Continued Litigation .....................9

        4.  The Proposed Method of Distributing Relief to the Class
Is Effective .................................................................10

    C.  The Remaining *Girsh* Factors Are Also Met ......................................14

        1.  The Complexity, Expense, and Likely Duration of the
Litigation Supports Approval of the Settlement .......................14

        2.  The Reaction of the Class to the Settlement .............................15

        3.  The Stage of the Proceedings .....................................................15

        4.  The Risks of Maintaining the Class Action Through Trial ......16

        5.  The Ability of Defendants to Withstand a Greater
Judgment ....................................................................16

4868-6583-2737.v4

**Page**

V.     CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE ........................................................17

      A.     The Class Meets the Requirements of Rule 23(a)...............................18

      B.     The Class Should Be Certified Under 23(b)(3)...................................19

VI.     NOTICE TO THE CLASS SHOULD BE APPROVED .............................20

VII.     PROPOSED SCHEDULE OF EVENTS ......................................................22

VIII.     CONCLUSION............................................................................................23

4868-6583-2737.v4

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................... 19

*Beneli v. BCA Fin. Servs., Inc.*,
    324 F.R.D. 89 (D.N.J. 2018) ................................................................ 10, 16-17

*Curiale v. Lenox Grp., Inc.*,
    2008 U.S. Dist. LEXIS 92851 (E.D. Pa. Nov. 14, 2008) .................................... 5

*Dartell v. Tibet Pharm., Inc.*,
    2017 WL 2815073 (D.N.J. June 29, 2017) ...................................................... 12

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................ 7

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ....................................................................... 6

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .............................................................*passim*

*Haas v. Burlington Cnty.*,
    2019 WL 413530 (D.N.J. Jan. 31, 2019) .................................................. 14, 15

*In re BearingPoint, Inc. Sec. Litig.*,
    232 F.R.D. 534 (E.D. Va. 2006) ................................................................. 19

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................. 18, 19

*In re Genworth Fin. Sec. Litig.*,
    2016 U.S. Dist. LEXIS 132269 (E.D. Va. Sept. 26, 2016) ............................... 12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ......................................................................... 5

**Page**

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) ..............................................................14

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  2017 WL 2734714 (D.N.J. June 26, 2017) ..........................................12

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) ............................................................12

*Schwartz v. Avis Rent a Car Sys., LLC*,
  2016 WL 3457160 (D.N.J. June 21, 2016) ..............................................7

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ..................................................................18

*Vasco v. Power Home Remodeling Grp. LLC*,
  2016 WL 5930876 (E.D. Pa. Oct. 12, 2016) ..........................................6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78j(b) ....................................................................................................3
  §78t(a) ....................................................................................................3
  §78u-4(a)(4) ............................................................................................2

**Page**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................. 17
    Rule 23(a) ............................................................................................ 17
    Rule 23(b)(3) ................................................................................ 17, 19
    Rule 23(c)(2)(B) .................................................................................. 22
    Rule 23(c)(3) ........................................................................................ 21
    Rule 23(e) .................................................................................. 2, 5, 20
    Rule 23(e)(1) ......................................................................................... 6
    Rule 23(e)(1)(B) ........................................................................... 20, 22
    Rule 23(e)(2) ..................................................................... 6, 7, 10, 13
    Rule 23(e)(2)(A) .................................................................................... 8
    Rule 23(e)(2)(B) .................................................................................... 8
    Rule 23(e)(2)(C)(i) ........................................................................ 9, 14
    Rule 23(e)(2)(C)(ii) ............................................................................ 11
    Rule 23(e)(2)(C)-(D) .......................................................................... 11
    Rule 23(e)(3) ......................................................................................... 7

17 C.F.R.
    §10b-5 ................................................................................................... 3

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (4th ed. 2004)
    §21.632 ............................................................................................ 5-6

4868-6583-2737.v4

Lead Plaintiff Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Lead Plaintiff") respectfully submits this memorandum of law in support of its motion for preliminary approval of the proposed settlement between Lead Plaintiff, on behalf of the Class, and Defendant Airbus SE ("Airbus" or the "Company"), and Defendants Guillaume M.J.D. Faury, Tom Enders, Dominik Asam, and Harald Wilhelm ("Individual Defendants" and, together with Airbus, "Defendants").

## I.   INTRODUCTION

Lead Plaintiff, on behalf of the Class, and Defendants have reached an agreement to resolve this securities class action for $5,000,000 for the benefit of the Class.  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed simultaneously herewith.[1]

The Settlement was reached by counsel with a keen understanding of the strengths and weaknesses of the case.  The Settlement was negotiated by counsel with extensive experience in securities class actions, and with the benefit of substantial investigation, based on an intelligent evaluation of the merits of Lead Plaintiff's claims, including the risk to recovery and likelihood of ultimate success. As detailed below, the Settlement constitutes a very good result for the Class and

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation.

satisfies all applicable requirements for preliminary approval set forth in Rule 23(e) as well as the additional *Girsh* factors which are considered by courts in the Third Circuit.

Accordingly, Lead Plaintiff submits that the proposed Settlement is fair, reasonable, and adequate and respectfully requests that the Court enter the Notice Order which will: (1) preliminarily approve the terms of the proposed Settlement, as set forth in the Stipulation; (2) certify the Class for settlement purposes; (3) approve the form and method for providing notice of the proposed Settlement to the Class; and (4) schedule a Settlement Hearing at which the Court will consider the request for final approval of: (a) the Settlement; (b) the Plan of Allocation of Settlement proceeds; and (c) Lead Counsel's application for an award of attorneys' fees and expenses and an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

## II.     PROCEDURAL BACKGROUND

The initial complaint was filed on August 6, 2020, and alleged violations of the federal securities laws.   On February 19, 2021, the Court issued an order appointing Operating Engineers Construction Industry and Miscellaneous Pension Fund as Lead Plaintiff and approving Lead Plaintiff's selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel, with Carella, Bryne, Cecchi, Olstein, Brody & Agnello, P.C. as Liaison Counsel.   The operative Class Action Complaint

("Complaint") asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5) against Defendants.

On or about March 28, 2022, the Parties reached an agreement in principle to resolve the Litigation.

## III.   TERMS OF THE SETTLEMENT

The $5,000,000.00, all cash, Settlement resolves all claims alleged by the Class against Defendants.   The terms of the Settlement are set forth in the Stipulation.

Notice to the Class and the cost of Notice and Administration Expenses will be funded by the Settlement Fund.  *See* Stipulation, ¶2.8.  Subject to the Court's approval, the parties propose a nationally recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), to administer the Settlement.  *See id.*, ¶1.3.  The proposed notice plan and plan for claims processing are discussed below in §VI and in the Declaration of Peter Crudo Regarding Notice and Administration ("Crudo Decl."), also filed concurrently herewith.

Because the Settlement Fund is a "qualified settlement fund," within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable.  All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in an amount up to 30% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation in an amount not to exceed $200,000; and (c) interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  *See* Stipulation, ¶6.3.

Once Notice and Administration Expenses, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses and any award to Lead Plaintiff have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00.   Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Class Members equitably based on the timing of their Airbus Securities purchases, acquisitions, and sales.

In exchange for the benefits provided under the Stipulation, Class Members will release the following "Released Claims" against Defendants:

> [A]ll claims, rights, liabilities, and causes of action of every nature and description, including both known claims and Unknown Claims (as defined in ¶1.43 [of the Stipulation]), rights, demands, liabilities or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), to the fullest extent that the law permits their release in this Litigation, by or on behalf of Lead Plaintiff or any other Class

- 4 -

Members against any of the Released Parties that have been alleged or could have been alleged in this Litigation (or in any forum or proceeding or otherwise), whether based on federal, state, local, statutory, or common or foreign law, or any other law, rule, or regulation, whether known claims or Unknown Claims, whether class, representative, or individual in nature, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether at law or in equity, matured or unmatured, that are based on, relate to, or arise out of both (i) the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, circumstances, representations, conduct, acts, or omissions or failures to act that have been or could have been alleged or asserted in the Litigation, and (ii) Lead Plaintiff's or any other Class Member's purchase of Airbus Securities during the Class Period.  Notwithstanding the foregoing, "Released Claims" does not include claims relating to the enforcement of the Settlement.

Stipulation, ¶1.29.

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.   The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  *See* Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.").  This involves two stages: preliminary approval followed by notice to the class, and then final approval after hearing.  *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see also Curiale v. Lenox Grp., Inc.*, 2008 U.S. Dist. LEXIS 92851, at *10 (E.D. Pa. Nov. 14, 2008) (citing *Manual for Complex Litigation*

§21.632 (4th ed. 2004)).  The Third Circuit has reiterated the long-standing principle that there is a "'strong presumption in favor of voluntary settlement agreements.'" *Vasco v. Power Home Remodeling Grp. LLC*, 2016 WL 5930876, at *4 (E.D. Pa. Oct. 12, 2016) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)).  "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart*, 609 F.3d at 595.[2]

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)   ***Approval of the Proposal***.   If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)   the class representatives and class counsel have adequately represented the class;
> >
> > (B)   the proposal was negotiated at arm's length;
> >
> > (C)   the relief provided for the class is adequate, taking into account:
> >
> > > (i)   the costs, risks, and delay of trial and appeal;

---

[2]   All emphasis is added and all citations are omitted unless otherwise noted.

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Overlapping with the factors listed in Rule 23(e)(2) are the *Girsh* factors that have been considered by the Third Circuit in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment . . . ; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Schwartz v. Avis Rent a Car Sys., LLC*, 2016 WL 3457160, at *6 (D.N.J. June 21, 2016) (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)) (quoting, in full, *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).  As discussed below, the terms and amount of the Settlement easily satisfy the factors identified under Rule 23(e)(2), as well as the *Girsh* factors identified by the Third Circuit.

4868-6583-2737.v4

**B.    Preliminary Approval of the Settlement Should Be Granted**

**1.    Lead Plaintiff and Its Counsel Have Adequately Represented the Class**

Lead Plaintiff and its counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this action on its behalf. Among other things, Lead Plaintiff investigated the relevant factual events, conducted an economic analysis of Airbus Securities, and engaged in extensive settlement negotiations with Defendants' Counsel. The result of these efforts is a very good settlement of $5,000,000 in cash that will provide significant, immediate relief to the Class.

**2.    The Proposed Settlement Is the Result of Good Faith Arm's Length Negotiations**

Rule 23(e)(2)(B) requires courts to consider a procedural factor – whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). There can be no question that the Settlement results from an arm's-length negotiation in which there is no hint of collusion. The Settling Parties began exploring a resolution of the Litigation in the fall of 2021, and although they were unable to resolve the case at that time, the Parties continued to discuss settlement and explore the strengths and weaknesses of the Litigation. Lead Plaintiff diligently investigated this action since its inception and was fully prepared in its settlement discussions, as the Settlement was negotiated at arm's length.

### 3.    The Proposed Settlement Is Adequate in Light of the Costs and Risks of Continued Litigation

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement given "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i).  In assessing the proposed Settlement, the Court should balance the benefits afforded to the Class – including the immediacy and certainty of a recovery – against the significant costs, risks, and delay of proceeding with the Litigation. Overlapping with Rule 23(e)(2)(C)(i) is the first *Girsh* factor which considers the complexity, expenses, and likely duration of the Litigation and the fourth and fifth *Girsh* factors which consider the risks of establishing liability and damages.  Indeed, securities class actions present numerous hurdles to proving liability that are difficult for plaintiffs to meet.  Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation are meritorious and remain confident in their ability to ultimately prove Lead Plaintiff's claims, further litigation and trial is always a costly and risky proposition, and pose substantial risks that make any recovery uncertain.

Although Lead Plaintiff believes the Complaint adequately alleges all elements of the claims, once past the motion to dismiss, the costs, risks, and delays of continued litigation would increase as the parties engaged in fact discovery, expert discovery, class certification, summary judgment briefing, pre-trial litigation, trial, and appeal.  For example, to prove its claims Lead Plaintiff would need to rely

extensively on several expert witnesses for analysis of key issues.  Each expert's testimony would be critical to demonstrating Defendants' liability, as well as issues relating to loss causation and damages, all of which would have likely come down to an unpredictable and hotly disputed "battle of the experts."  If, for some reason, the Court determined that even one of Lead Plaintiff's experts should be excluded from testifying at trial, Lead Plaintiff's case would become more difficult to prove.

In complex cases such as this one, "'[t]he risks surrounding a trial on the merits are always considerable.'"  *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103-04 (D.N.J. 2018).  Here, in the absence of a settlement, there is a genuine risk that the Class would recover an amount significantly less than the total amount of the Settlement – or nothing at all.  Thus, the benefits created by the Settlement now, particularly when viewed in the context of the risks, costs, delay, and uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement. Considering the risks of continued litigation, and the time and expense that would be incurred to prosecute the action through trial, the $5 million Settlement is a meaningful and certain recovery that is in the best interests of the Class.

### 4. The Proposed Method of Distributing Relief to the Class Is Effective

Rule 23(e)(2) further instructs courts to consider: (i) the effectiveness of the proposed method of distribution to the class; (ii) the terms and timing of any proposed attorney's fees; (iii) any other agreements between the parties; and (iv)

- 10 -

whether the settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(C)-(D).  Each of these factors further supports approval of the proposed Settlement.

First, as demonstrated below in §VI and in the Crudo Declaration, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  *See, e.g.*, Crudo Decl., ¶6.  In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Notice Order.  *See id.*, ¶17.

The claims process is also effective and includes a standard claim form which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's event study analysis estimating the amount of artificial inflation in the price of Airbus Securities during the Class Period.  A thorough claim review process, including how

deficiencies are addressed, is also explained in the Crudo Declaration.  *See id.*, ¶¶24-26.

Second, as stated in the Notice, Lead Counsel intends to seek an award of attorneys' fees in an amount up to 30% of the Settlement Amount and expenses in an amount not to exceed $200,000, plus interest on both amounts.  This fee request is in line with other fee awards approved in recent cases in this District.  *See, e.g.*, *Dartell v. Tibet Pharm., Inc.*, 2017 WL 2815073, at *10 (D.N.J. June 29, 2017) ("[t]he one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method"); *see also P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at *12 (D.N.J. June 26, 2017). The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel upon entry of an order awarding such fees and expenses.  *See* Stipulation, ¶7.2; *see also In re Genworth Fin. Sec. Litig.*, 2016 U.S. Dist. LEXIS 132269, at *28 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").  Indeed, such "provisions are common."  *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

Third, the Parties have not entered into any other agreements other than a standard Supplemental Agreement Regarding Requests for Exclusion, which provides that if the Recognized Loss held by Class Members who timely and validly

elect to exclude themselves from the Class in accordance with the requirements stated in the Notice exceeds a certain threshold, Airbus shall have the option to terminate the Settlement.  Stipulation, ¶8.4.

And fourth, the Settlement treats Class Members equitably.  As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1), the Settlement treats Class Members equitably relative to each other, based on the timing of their Airbus Securities purchases, acquisitions and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized claims.  Because the proposed Plan of Allocation subjects all Members of the Class – including Lead Plaintiff – to the same formulas for distribution of the Settlement, the Settlement treats Class Members equitably.

*     *     *

Thus, each factor identified under Rule 23(e)(2) is satisfied.  Given the litigation risks involved, the complexity of the underlying issues, and the skill of defense counsel, the $5,000,000 Settlement is a good recovery for the Class.  Such a result could not have been achieved without the full commitment of Lead Plaintiff and Lead Counsel.

C.    **The Remaining *Girsh* Factors Are Also Met**

1.    **The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**

The first factor of the *Girsh* analysis is the complexity, expense, and likely duration of the litigation, which also bears on the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal." These are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being assessed is a securities class action. "Generally, where bringing a litigation to its conclusion 'would be legally and factually complex and extremely expensive and time-consuming,' this factor favors settlement." *Haas v. Burlington Cnty.*, 2019 WL 413530, at *5 (D.N.J. Jan. 31, 2019); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 537 (D.N.J. 1997).

This case exemplifies the complexity of securities class actions. Lead Plaintiff advanced numerous complex legal and factual claims under the federal securities laws. Lead Plaintiff alleges that Airbus and the Individual Defendants made material misrepresentations during the Class Period regarding, among other things, the Company's compliance with relevant anti-corruption laws and regulations; the true scope and severity of the Company's bribery and corruption scheme; and the foreseeable consequences resulting from the resolution of government investigations. Assuming Lead Plaintiff defeated Defendants' motion to dismiss and prevailed at class certification and summary judgment, the eventual

- 14 -

trial that would take place years into the future would last several weeks and would be very complicated for jurors, in addition to being very expensive for the Class.  An appeal would no doubt have followed and would likely have taken years to resolve.  This protracted process would have caused the Class to incur additional expense, regardless of the outcome.  Accordingly, this factor strongly supports preliminary approval of the proposed Settlement.

### 2.   The Reaction of the Class to the Settlement

Lead Plaintiff has participated throughout the prosecution of the case and was involved in the decision to enter into the Settlement.  Notice regarding the Settlement has not yet been mailed or otherwise distributed.  If any objections are received after the Notice is disseminated, they will be addressed by Lead Counsel in connection with Lead Plaintiff's motion for final approval of the Settlement and in its reply in support thereof.

### 3.   The Stage of the Proceedings

"The third *Girsh* factor 'captures the degree of case development that class counsel [had] accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'"  *Haas*, 2019 WL 413530, at *6.  The depth of Lead Plaintiff's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are adequate to support the Settlement.  Lead Counsel's knowledge is based

on its comprehensive investigation in preparing to file an amended complaint and extensive economic and damages analyses.    The resultant accumulation of information permitted Lead Plaintiff and Lead Counsel to intelligently weigh the strengths and weaknesses of the case and engage in effective settlement negotiations with Defendants.

### 4.    The Risks of Maintaining the Class Action Through Trial

Where, as "[h]ere, the Class had yet to be certified and there is no guarantee of success . . . the risks favor settlement."    *Beneli*, 324 F.R.D. at 104.    Lead Plaintiff's motion for class certification has not yet been briefed or decided, which poses another risk to the claims asserted in the Litigation.    In fact, even assuming class certification was granted, the Court may revisit certification at any time which presents a continuous risk that this case may not be maintained on a class-wide basis through trial.

### 5.    The Ability of Defendants to Withstand a Greater Judgment

In assessing a proposed settlement, a court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although this factor is not generally determinative. *See Beneli*, 324 F.R.D. at 104.    "A trial in this case would be expensive and lengthy and continued litigation, including possible appeals, could have depleted [Airbus's] resources to pay any judgment or possible

future settlement thereby making early settlement even more valuable to the proposed class members." *Id.* As a result, this factor favors preliminarily approving the Settlement here.

## V.    CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Under the terms of the Stipulation, the parties have agreed, for purposes of Settlement only, to the certification of the Class. Stipulation, ¶3.1. The Class is defined as "all Persons who purchased or otherwise acquired Airbus Securities[3] under the ticker symbols "EADSY" and "EADSF" from February 24, 2016 through July 30, 2020, inclusive." *Id.*, ¶1.4.

For the reasons explained below, the Class should be certified under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. In the settlement context, class certification criteria are easily met because the class is unified by a common interest in a reasonable recovery. There is no doubt that this Class meets all of the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure.

---

[3] "Airbus Securities" means the Company's ADRs that trade in the U.S. on the over-the-counter market ("OTC") under the ticker symbol "EADSY," and the Company's foreign ordinaries that trade in the U.S. on the OTC under the ticker symbol "EADSF." Stipulation, ¶1.32.

## A.    The Class Meets the Requirements of Rule 23(a)

The Class easily meets the requirements of numerosity, commonality, typicality, and adequacy of representation required by Rule 23(a) of the Federal Rules of Civil Procedure.

*First*, it is undisputed that the Class consists of hundreds, if not thousands, of individuals who purchased or otherwise acquired Airbus Securities between February 24, 2016 and July 30, 2020, inclusive.

*Second*, commonality focuses on "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). Commonality is satisfied here as there is one issue common to Class Members, including whether Defendants, through the conduct complained of in the Complaint, violated the securities laws by making false and misleading statements about the Company's compliance with relevant anti-corruption laws and regulations and failed to disclose the true scope, severity, and foreseeable consequences of the Company's bribery and corruption scheme.

Typicality is satisfied if the "'claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 244 n.25 (3d Cir. 2001). Here, Lead Plaintiff's claims are typical because

it purchased Airbus Securities during the Class Period and alleges that it was damaged thereby.

Finally, the claims of all Class Members have been fairly and adequately protected because Lead Plaintiff and its counsel have no disabling conflicts of interest, are well qualified, and have vigorously prosecuted and settled this action on behalf of the Class. *See id.*

**B.      The Class Should Be Certified Under 23(b)(3)**

The parties seek certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Rule 23(b)(3) requires common questions of law or fact to predominate over questions affecting individual class members and the class action to be superior to other methods for the efficient adjudication of the claims. The United States Supreme Court noted that the predominance test is readily met in cases alleging securities fraud.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  Thus, class treatment is the appropriate method of settling this controversy. Moreover, because the Court is certifying this action for settlement purposes only, it need not determine whether the Class would be manageable for litigation purposes. *See id.* at 620.

Proceeding as a class action is also superior to other available methods for resolution of the Class Members' claims.  *See, e.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 545 (E.D. Va. 2006) ("class actions are a particularly

4868-6583-2737.v4

appropriate and desirable means to resolve claims based on alleged violations of the securities laws").

## VI.    NOTICE TO THE CLASS SHOULD BE APPROVED

Rule 23(e) governs notice requirements for settlements or "compromise[s]" in class actions.  The Rule provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  The Rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The parties have agreed that promptly after the Court's entry of the Notice Order, Lead Counsel shall disseminate the Notice and Summary Notice to the Class. *See* Stipulation, ¶4; Notice Order, ¶11.  The parties have negotiated the form of the Notice to be disseminated to all Persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort.  *Id.*  The parties further propose to supplement the mailed Notice with the Summary Notice, to be published once in *The Wall Street Journal* and once over a national newswire service. The Notice and Summary Notice are attached to the Notice Order as Exhibits A-1 and A-3, respectively.

The proposed "long form" Notice apprises Class Members of the nature of the Litigation, the definition of the Class, the claims and issues in the Litigation, and the claims to be released in the Settlement. The Notice also: (i) advises that a Class Member may enter an appearance through counsel if desired; (ii) describes the binding effect of a judgment on Class Members under Rule 23(c)(3); (iii) states the procedures and deadline for Class Members to exclude themselves from the Class and for objection to the proposed Settlement, the proposed Plan of Allocation, or the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Proof of Claim to recover from the Settlement; and (v) provides the date, time, and location of the Settlement Hearing. *See* Stipulation, Ex. A-1.

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per-share basis; (ii) that the parties do not agree on the average amount of damages per share that would be recoverable in the event Lead Plaintiff prevailed, and stating the issue(s) on which the parties disagree; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (iv) contact information for Lead Counsel; and (v) the reasons the parties are proposing the Settlement. The contents of the Notice therefore satisfy all applicable requirements. *See id.*

Lead Plaintiff also requests that the Court appoint Gilardi as Claims Administrator to provide all notices approved by the Court to Class Members, to process Proofs of Claim, and to administer the Settlement.  Gilardi is a leader in legal administration services for class action settlements and legal noticing programs in the country.  *See* Crudo Decl., ¶¶4-5.  For over 30 years, Gilardi has successfully handled the notice and administration of some of the largest and most complicated securities class actions, including the $7.2 billion settlement in the *Enron* securities litigation, among others.  *Id.*

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Similarly, Rule 23(e)(1)(B) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The proposed notice plan here readily meets those standards, and is typical of notice plans in similar securities class actions.  For all of these reasons, the notice program should be approved by the Court.

## VII.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing:

| Notice mailed to the Class ("Notice Date") | 14 calendar days after the Notice Order is entered |
|---|---|
| Summary Notice published | 7 calendar days from the Notice Date |

| | |
|---|---|
| Date by which to file papers in support of the proposed Settlement, Plan of Allocation and request for attorneys' fees and expenses | 35 calendar days before the Settlement Hearing |
| Last day for Class Members to opt-out or object to the proposed Settlement | 21 calendar days before the Settlement Hearing |
| Date by which to file reply papers in response to objections or comments to the proposed Settlement, Plan of Allocation, or request for attorneys' fees and expenses | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | 100 calendar days after the Notice Order is entered |
| Last day for Class Members to file Proofs of Claim | 90 days from the Notice Date |

## VIII. CONCLUSION

For the reasons set forth above, the Settlement warrants this Court's preliminary approval.

DATED:  May 24, 2022                Respectfully submitted,

                                CARELLA, BYRNE, CECCHI,
                                OLSTEIN,
                                  BRODY & AGNELLO, P.C.
                                JAMES E. CECCHI
                                DONALD A. ECKLUND


                                    s/ James E. Cecchi
                                JAMES E. CECCHI

- 23 -

4868-6583-2737.v4

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

Liaison Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
BRIAN O. O'MARA
STEVEN M. JODLOWSKI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
bomara@rgrdlaw.com
sjodlowski@rgrdlaw.com

Lead Counsel for Lead Plaintiff