CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

Liaison Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW J. KORNECKI, Individually and on Behalf of All Others Similarly Situated, | No. 2:20-cv-10084-KM-JBC |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **STIPULATION AND AGREEMENT OF SETTLEMENT** |
| AIRBUS SE, et al., | |
| Defendants. | |

This Stipulation of Settlement, dated May 20, 2022 (the "Stipulation"), is made and entered into by and among the following Settling Parties (as defined further in §III hereof) to the above-entitled Litigation: (i) Lead Plaintiff Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Pension Fund," "Plaintiff," or "Lead Plaintiff"), on behalf of itself and others similarly situated Class Members, by and through its counsel of record in the Litigation; and (ii) Defendant Airbus SE ("Airbus" or the "Company"), and Defendants Guillaume M.J.D. Faury, Tom Enders, Dominik Asam, and Harald Wilhelm ("Individual Defendants" and collectively with Airbus, "Defendants"), by and through their counsel of record in the Litigation.  The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

All words or terms used herein that are capitalized shall have the meanings ascribed to those words or terms as set forth herein and in ¶¶1.1-1.43 hereof entitled "Definitions."

## I.      THE LITIGATION

On August 6, 2020, a securities class action, captioned *Kornecki v. Airbus SE, et al.*, Case No. 2:20-cv-10084-KM-JBC (the "Litigation"), was brought on behalf of investors in Airbus American Depository Receipts ("ADRs") and foreign ordinary

shares ("foreign ordinaries") in the United States District Court for the District of New Jersey (the "Court").

On February 19, 2021, the Court entered an Order that, among other things, appointed the Pension Fund as Lead Plaintiff pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4 *et seq.*; approved the Pension Fund's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel for the class; and ordered that any subsequently filed, removed, or transferred actions related to the claims asserted in the Litigation be consolidated into the Litigation (ECF 20).

The operative complaint is the Class Action Complaint (the "Complaint"), filed on August 6, 2020, which alleges violations of §§10(b) and 20(a) of the Exchange Act on behalf of a class of all purchasers of Airbus Securities in the United States between February 24, 2016, and July 30, 2020, inclusive.  As set forth in the Complaint, the Company's ADRs trade in the U.S. on the over-the-counter market (the "OTC") under the ticker symbol "EADSY," and the Company's foreign ordinaries trade in the U.S. on the OTC market under the ticker symbol "EADSF."  Among other things, the Complaint alleges violations of the Exchange Act premised on alleged false and misleading statements that allegedly artificially inflated the price of Airbus Securities traded in the U.S.

On or about March 28, 2022, the Parties reached an agreement in principle to resolve the Litigation, including the Parties' agreement to settle and release all claims against all Defendants in return for a payment made by or caused to be made by Airbus of $5,000,000 in cash for the benefit of the Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

## II.   LEAD PLAINTIFF'S CLAIMS AND BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation through discovery, summary judgment, and trial (and any possible appeals).  Lead Plaintiff and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation.  Lead Counsel and Lead Plaintiff are mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Litigation.  Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon the Class and is in the best interests of the Class.

## III.   DEFENDANTS' DENIALS OF LIABILITY

Defendants, individually and collectively, have denied and continue to deny each and all of the claims, contentions alleged in the Litigation, and charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been made by Lead Plaintiff in the Litigation. They have expressly denied and continue to deny that they have violated the federal securities laws or any other laws, or have otherwise misled investors as alleged in the Litigation.  Defendants have denied and continue to deny the allegations that any of the Defendants made any material misstatements or omissions or engaged in any fraudulent scheme, and that any member of the Class has suffered damages resulting from the conduct alleged in the Litigation.  In addition, Defendants maintain that they have meritorious defenses to the claims alleged in the Litigation.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted, burdensome, and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  Defendants also considered the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation.  Defendants have, therefore, determined that it is desirable and beneficial to them that the Litigation be fully, finally, and forever resolved, discharged, and settled in the manner and upon the terms and conditions set forth in this Stipulation.

NOW THEREFORE, without any concession by Lead Plaintiff that the Litigation lacks merit, and without any concession by Defendants of any liability or wrongdoing or truth as to Lead Plaintiff's allegations or lack of merit in Defendants' defenses, it is hereby **STIPULATED AND AGREED**, by and among the parties to this Stipulation ("Parties"), through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties hereto, all Released Claims (including Unknown Claims) and all Released Defendants' Claims (including Unknown Claims), as against all Released Parties and Lead Plaintiff, Class Members, and their counsel, employees, successors and assigns, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs (except as provided in the Stipulation), upon and subject to the following terms and conditions.

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### 1.   Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1   "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claimant" means any Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.3    "Claims Administrator" means the firm of Gilardi & Co. LLC. Defendants shall have no involvement in the retention of the Claims Administrator or any other claims administrator.

1.4    "Class," "Class Members," "Settlement Class," or "Members of the Class" means all Persons who purchased or otherwise acquired Airbus Securities under the ticker symbols "EADSY" and "EADSF" from February 24, 2016 through July 30, 2020, inclusive, and were allegedly damaged thereby.  Excluded from the Class are: (i) Defendants, (ii) the current and Class Period officers and directors of the Company, (iii) members of the immediate families of the Individual Defendants, and (iv) the legal representatives, heirs, successors-in-interest, or assigns of any excluded person or entity, and any entity in which such excluded persons have or had a controlling interest.  Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice.

1.5    "Class Period" means the period between February 24, 2016 and July 30, 2020, inclusive.

1.6    "Complaint" means the Class Action Complaint, filed in the Litigation on August 6, 2020.

1.7     "Court" means the United States District Court for the District of New Jersey.

1.8     "Defendants" means Airbus and the Individual Defendants.

1.9     "Defendants' Counsel" means the law firms of Paul Hastings LLP and Debevoise & Plimpton LLP.

1.10    "Effective Date" means the date upon which the Settlement shall have become effective, as set forth in ¶8.1, below.

1.11    "Escrow Account" means the separate escrow interest-bearing account designated and controlled by Lead Counsel, as Escrow Agent, into which the Settlement Amount will be deposited for the benefit of the Class.

1.12    "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP, or its successor(s).

1.13    "Fee and Expense Application" means Lead Counsel's application for an award of attorneys' fees and litigation expenses, and any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) of the PSLRA in connection with its representation of the Class.

1.14    "Fee and Expense Award" shall have the meaning set forth in ¶6.3(c) of this Stipulation.

1.15    "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination

of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in all material respects and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this definition of "Final," an "appeal" includes any motion to alter or amend under Rule 52(b) or Rule 59(e) of the Federal Rules of Civil Procedure, any appeal as of right, discretionary appeal, interlocutory appeal, petition for writ of certiorari, or other proceeding involving writs of certiorari or mandamus, and any other proceedings of like kind. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

1.16 "Judgment" means the judgment to be entered by the Court approving the Settlement, in the form attached hereto as Exhibit B, or such other substantially similar form mutually agreed to by the Settling Parties.

1.17 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP.

1.18   "Lead Plaintiff" or "Plaintiff" means Operating Engineers Construction Industry and Miscellaneous Pension Fund.

1.19   "Liaison Counsel" means Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.

1.20   "Litigation" shall have the meaning set forth in §I of this Stipulation.

1.21   "Net Settlement Fund" means the Settlement Fund less:   (i) Court-awarded attorneys' fees and expenses and any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4); (ii) Notice and Administrative Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.

1.22   "Notice" means the Notice of Pendency and Proposed Settlement of Class Action to be sent to Class Members, which shall be substantially in the form attached hereto as Exhibit A-1.

1.23   "Notice Order" means the proposed Order Preliminarily Approving Settlement and Providing for Notice, substantially in the form attached hereto as Exhibit A.

1.24   "Person" means a natural person, individual, corporation (including all divisions and subsidiaries), general partnership, limited partnership, domestic partnership, marital community,  association, joint stock company, joint venture, professional corporation, estate, legal representative, trust, unincorporated association,

government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

1.25   "Plaintiff's Counsel" means Lead Counsel and Liaison Counsel.

1.26   "Plan of Allocation" means the plan for allocating the Net Settlement Fund as set forth in the Notice, or such other plan of allocation as the Court may approve.

1.27   "Proof of Claim" means the Proof of Claim and Release form for submitting a claim, which shall be substantially in the form attached hereto as Exhibit A-2.

1.28   "Related Parties" means each of a Defendant's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, members, agents, administrators, attorneys, accountants, auditors, bankers, underwriters, investment advisors, personal or legal representatives, predecessors, successors, direct and/or indirect parents, subsidiaries, divisions, joint ventures, partnerships, limited liability companies, affiliates, assigns, spouses, heirs, estates, related or affiliated entities, any entity in which a Defendant has a controlling interest, any member of a Defendant's immediate family, any trust of which a Defendant is the settlor or which is for the benefit of a Defendant and/or any member of a Defendant's immediate family, and any entity in which a Defendant and/or any

member of a Defendant's immediate family has or had a controlling interest (directly or indirectly).

1.29   "Released Claims" means all claims, rights, liabilities, and causes of action of every nature and description, including both known claims and Unknown Claims (as defined in ¶1.43 hereof), rights, demands, liabilities or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), to the fullest extent that the law permits their release in this Litigation, by or on behalf of Lead Plaintiff or any other Class Members against any of the Released Parties that have been alleged or could have been alleged in this Litigation (or in any forum or proceeding or otherwise), whether based on federal, state, local, statutory, or common or foreign law, or any other law, rule, or regulation, whether known claims or Unknown Claims, whether class, representative, or individual in nature, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether at law or in equity, matured or unmatured, that are based on, relate to, or arise out of both (i) the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, circumstances, representations, conduct, acts, or omissions or failures to act that have been or could have been alleged or asserted in the Litigation, and (ii) Lead Plaintiff's or any other Class Member's purchase of

Airbus Securities during the Class Period.  Notwithstanding the foregoing, "Released Claims" does not include claims relating to the enforcement of the Settlement.

1.30   "Released Defendants' Claims" means all claims and causes of action of every nature and description, including both known claims and Unknown Claims (as defined below), whether arising under federal, state, common or foreign law, or any other law, that Defendants could have asserted against any of the Released Plaintiff Parties, including Plaintiff's Counsel and Class Members, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement.

1.31   "Released Parties" means each and all of the Defendants, and each and all of their respective Related Parties.

1.32   "Securities" or "Airbus Securities" means the Company's ADRs that trade in the U.S. on the OTC market under the ticker symbol "EADSY," and the Company's foreign ordinaries that trade in the U.S. on the OTC market under the ticker symbol "EADSF."

1.33   "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of the Stipulation.

1.34   "Settlement Amount" means five million U.S. dollars ($5,000,000).

1.35   "Settlement Fund" means the Settlement Amount, plus any accrued interest earned thereon.

1.36   "Settlement Hearing" means the hearing to be held by the Court to determine whether: (i) the Settlement is fair, reasonable, and adequate and should be approved; (ii) the Plan of Allocation is fair, reasonable, and adequate and should be approved; and (iii) Lead Counsel's request for an award of attorneys' fees and expenses should be approved.

1.37   "Settling Parties" means, collectively, Lead Plaintiff, on behalf of itself and each of the Class Members, and the Defendants.

1.38   "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto.

1.39   "Summary Notice" means the Summary Notice for publication, which shall be substantially in the form attached hereto as Exhibit A-3.

1.40   "Supplemental Agreement" shall have the meaning set forth in ¶8.4 of this Stipulation.

1.41   "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund.

1.42   "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.9 hereof.

1.43   "Unknown Claims" means collectively any Released Claims that Lead Plaintiff or any other Class Members does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected such Class Member's settlement or decisions with respect to the Settlement, including, but not limited to, the release of the Released Parties or the decision not to object to or opt out of this Settlement.  "Unknown Claims" also means any Released Defendants' Claims that Defendants do not know or suspect to exist in their favor at the time of the release of the Released Plaintiff Parties, including Plaintiff's Counsel and Class Members, which if known by them, might have affected their settlement or decisions with respect to the Settlement, including, but not limited to, the release of the Released Plaintiff Parties.  Unknown Claims include, without limitation, those claims in which some or all of the facts composing the claim may be unsuspected, undisclosed, concealed, or hidden.  With respect to any and all Released Claims and Released Defendants' Claims, the Released Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Class Members (as regards the Released Claims) and the Defendants (as regards the Released Defendants' Claims) shall expressly waive and relinquish, and each Class Member shall be deemed to have and by operation of law and of the Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by California Civil Code §1542, or any law of any state or territory

of the United States, or principle of common law or of international or foreign law, which is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**.

Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly fully, finally, and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Lead Plaintiff and Defendants acknowledge, and Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

2.    **The Settlement**

a.    **The Settlement Fund**

2.1    In full settlement of the Released Claims, Airbus shall cause the Settlement Amount to be transferred to an account controlled by the Escrow Agent no later than ten (10) calendar days after the later of: (a) entry of the Notice Order; or (b) the provision to Defendants of information necessary to effectuate a payment of funds, including without limitation the beneficiary account name, the U.S. bank name, address, account number and ABA bank code (*i.e.*, routing number), the payment reference, a completed W-9 form for the payee, and payee instructions for payment by check (the later of the foregoing (a) and (b) being hereinafter referred to as the "Payment Date").  These funds, together with any interest and income earned thereon once transferred, shall constitute the Settlement Fund.

2.2    If the entire Settlement Amount is not deposited into the Escrow Account by the Payment Date, Lead Counsel may terminate the Settlement but only if: (i) Defendants have received from Lead Counsel written notice of Lead Counsel's intention to terminate the Settlement; and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

2.3    The payment described in ¶2.1 is the only payment to be made by Airbus or on behalf of the Defendants in connection with this Settlement.

### b.     The Escrow Agent

2.4     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Settlement Fund shall bear all costs and risks related to the investments of the Settlement Amount.

2.5     The Escrow Agent shall not disburse the Settlement Fund except: (a) as provided in this Stipulation; (b) by an order of the Court: or (c) with the written agreement of Lead Counsel and Defendants' Counsel.

2.6     Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to, the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.7     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.8     Prior to the Effective Date and without further order of the Court, up to $400,000 of the Settlement Fund may be used by Lead Counsel to pay reasonable costs and expenses actually incurred in connection with providing notice to the Class, locating Class Members, administering and preparations for distributing the Net Settlement Fund to Authorized Claimants, and processing Proofs of Claim ("Notice and Administrative Expenses").  Defendants are not responsible for, and shall not be liable for, any costs incurred in connection with the Notice and Administrative Expenses.  After the Effective Date, Lead Counsel may pay all further reasonable Notice and Administrative Expenses, regardless of amount, without further order of the Court.

### c.     Taxes

2.9     (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation

for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)      For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.9(a) hereof) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

(c)      All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) Tax Expenses shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for, or liability whatsoever with respect to, the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and

shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); the Released Parties are not responsible therefor nor shall they have any liability with respect thereto.  The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(d)    Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to ¶¶2.10 and 6.1 below, the Released Parties are not responsible for Taxes, Tax Expenses, costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, or paying escrow fees and costs, nor shall they be liable for any claims with respect thereto.

### d.    Termination of the Settlement

2.10   In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, including, without limitation, in

the event the Stipulation is not approved or Judgment is reversed or vacated following any appeal taken therefrom, the Settlement Fund (including accrued interest), less (i) Notice and Administrative Expenses actually incurred or due and owing, and (ii) Taxes or Tax Expenses pursuant to ¶¶2.8-2.9 hereof actually incurred or due and owing, shall be refunded to such Persons that paid the Settlement Amount pursuant to written instructions from Airbus' counsel to the party, parties, or insurers that paid the Settlement Amount within ten (10) business days from the date of the notice from counsel for Defendants pursuant to ¶9.16.

### 3.    Certification of the Class

3.1    Solely for purposes of this Settlement, and subject to approval by the Court, the Settling Parties agree that the Class shall be certified and Lead Plaintiff and Lead Counsel shall be appointed as representatives of the Class pursuant to Federal Rule of Civil Procedure 23.  Should the Class not be certified, or should any court amend the scope of the Class, each of the Settling Parties reserves the right to void this Stipulation in accordance with ¶8.3 hereof.

### 4.    Notice Order and Settlement Hearing

4.1    Promptly after execution of the Stipulation, Lead Counsel shall promptly submit the Stipulation together with its exhibits (the "Exhibits") to the Court and shall apply for entry of the Notice Order, in the form of Exhibit A attached hereto, or such other substantially similar form mutually agreed to by the Settling Parties, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation,

certification of the Class and appointment of Lead Counsel as counsel for the Class for settlement purposes only, and approval for mailing of the Notice and publication of the Summary Notice, in the forms of Exhibits A-1 and A-3, respectively, attached hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and the date of the Settlement Hearing.

4.2    Airbus shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to receive notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715, *et seq.* ("CAFA"). Airbus is solely responsible for the costs of the CAFA notice and administering the CAFA notice.

4.3    Lead Counsel shall request that, after notice is given to the Class, the Court hold the Settlement Hearing and approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5.    Releases**

5.1    Upon the Effective Date, without any further action by anyone, Lead Plaintiff, and each of the Class Members (who have not validly opted out of the

Class), on behalf of themselves, and their respective former and present officers, directors, employees, agents, affiliates, parents, subsidiaries, insurers, reinsurers, heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of the law and of the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, discharged, and dismissed on the merits with prejudice any and all Released Claims (including, without limitation, Unknown Claims) against the Released Parties (whether or not such Class Member executes and delivers a Proof of Claim.  The releases and waivers contained in this section were separately bargained for and are essential elements of this Stipulation and the Settlement.

5.2    The Proof of Claim to be executed by Class Members shall release all Released Claims against the Released Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto, or such other substantially similar form mutually agreed to by Lead Counsel and Defendants' Counsel.  However, the failure of a Class Member to submit such Proof of Claim shall have no effect on the provisions of ¶¶5.1 and 5.3, inclusive, which shall remain in full force and effect as to each of the Class Members (who have not validly opted out of the Class) irrespective of any lack of submission of a Proof of Claim.

5.3    Upon the Effective Date, Lead Plaintiff and each of the Class Members (who have not validly opted out of the Class) and anyone claiming through or on

behalf of any of them, shall be permanently and forever barred and enjoined from commencing, maintaining, instituting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Released Parties, and each of them.  The Court shall retain exclusive jurisdiction to interpret and enforce the permanent injunction described in this paragraph.

5.4    Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the law and of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiff, Class Members, and their counsel, employees, successors and assigns from all Released Defendants' Claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of: (i) the Litigation, or (ii) the Released Claims.

**6.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

6.1    The Claims Administrator shall provide Notice of the Settlement to the Class, shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.  The Claims Administrator will be subject to such supervision and direction from the Court and/or Lead Counsel as may be necessary or as circumstances may require.  The Released Parties shall have no responsibility for or interest whatsoever with respect to

the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to the Lead Plaintiff, Class Members, or Plaintiff's Counsel, in connection with such administration, including, but not limited to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

6.2    In accordance with the schedule set forth in the Notice Order, Lead Counsel will cause the Notice, substantially in the form of Exhibit A-1 attached hereto, and a Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, to be mailed by the Claims Administrator to all shareholders of record, or nominees. The Notice and Proof of Claim shall also be posted on the Settlement website.  In accordance with the schedule set forth in the Notice Order, the Summary Notice, substantially in the form of Exhibit A-3 attached hereto, will also be published once in

the national edition of *The Wall Street Journal* and once over a national newswire service.  The cost of providing such notice shall be paid out of the Settlement Fund.

6.3     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administrative Expenses;

(b)     to pay the Taxes and Tax Expenses described in ¶2.9 hereof;

(c)     to pay Plaintiff's Counsel's attorneys' fees and expenses (the "Fee and Expense Award"), and any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4), if and to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the balance of Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.4     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with ¶¶6.5-6.16 below.

6.5     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, postmarked by no later than ninety (90) calendar days after the Notice Date (as defined in Exhibit A attached hereto), or such other time

- 26 -

as may be set by the Court (the "Bar Date"), signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to such Person.

6.6    Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim by the Bar Date, or such other period as may be ordered by the Court, or who submit a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Parties concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims, so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

6.7    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if

any, to which each claim shall be allowed, subject to the review by the Court pursuant to ¶6.8 below.

6.8     Proofs of Claim that do not meet the submission requirement may be rejected.   Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶6.9 below.

6.9     If any Claimant whose timely claim has been rejected in whole or in part for curable deficiency, desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the mailing of the notice required in ¶6.8 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the Claimant's request for review to the Court.

6.10   Each Claimant who declines to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Class Member and the validity and amount of the Claimant's claim.   In connection with processing the Proofs of Claim, no discovery shall be allowed on the merits of the Litigation or the Settlement.   All proceedings with respect to the administration, processing and determination of claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.   All Class Members, other Claimants, and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

6.11   Following the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.

6.12   Defendants shall not have a reversionary interest in the Net Settlement Fund.  If there is any balance remaining in the Net Settlement Fund after a reasonable

period of time after the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00. These redistributions shall be repeated so long as they are economically feasible. Any balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate shall be donated to an appropriate, non-profit, charitable organization serving the public interest, selected by Lead Counsel.

6.13    This Settlement is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to Airbus or its insurers. The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

6.14    Defendants shall take no position with respect to the Plan of Allocation or any other such plan as may be approved by the Court.

6.15    No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Released Parties, the Claims Administrator or other entity designated by Lead Counsel

based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court. This does not include any claim by any party for breach of this Stipulation.

6.16    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.  Class Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.

## 7.    Plaintiff's Counsel's Fees and Expenses

7.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund of: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such fees and expenses at the same rate and for the

same time periods as earned by the Settlement Fund (until paid), as may be awarded by the Court. Any and all such fees, expenses and costs awarded by the Court shall be payable solely out of the Settlement Fund. In addition, Lead Plaintiff may submit an application for an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. Lead Counsel reserves the right to make additional applications for distributions from the Settlement Fund for fees and expenses incurred.

7.2    The Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses. Lead Counsel may thereafter allocate the Fee and Expense Award among counsel for Plaintiff in a manner in which it in good faith believes reflects the contributions of such counsel to the institution, prosecution, and resolution of the Litigation. Any such awards shall be paid solely by the Settlement Fund.

7.3    In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified by final non-appealable order, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel shall be obligated, within ten (10) business days from receiving notice from Airbus' counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund the fees and expenses previously paid to Lead Counsel from the Settlement Fund

plus the interest earned thereon in an amount consistent with such reversal or modification. Lead Counsel, as a condition of receiving the Fee and Expense Award, agrees that the law firms and its respective partners are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are severally liable and responsible for any required repayment.

7.4    The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, with all amounts to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including the releases contained herein).

7.5    The Released Parties shall have no responsibility for or liability with respect to the payment of any Fee and Expense Award to Plaintiff's Counsel or any Class Member's counsel or any amount to Lead Plaintiff (apart from payment of the Settlement Amount pursuant to ¶2.1), or with respect to the allocation among Plaintiff's Counsel, and/or any other Person who may assert some claim thereto.

8.     **Conditions of Settlement, Effect of Disapproval,**
       **Cancellation or Termination**

8.1     The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     execution of the Stipulation and such other documents as may be required to obtain Final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b)     the Court has entered the Notice Order, substantially in the form of Exhibit A hereto, as required by ¶4.1 hereof;

(c)     the Settlement Amount has been deposited into the Escrow Account maintained by the Escrow Agent;

(d)     Airbus has not exercised the option to terminate the Stipulation pursuant to ¶¶8.3-8.4 hereof;

(e)     the Court has entered the Judgment that, *inter alia*, dismisses with prejudice the Litigation, as to the Lead Plaintiff and other Class Members, and as against each of the Defendants, as set forth above, and as reflected in the form of Exhibit B attached hereto, or such other substantially similar form mutually agreed to by the Settling Parties; and

(f)     the Judgment has become Final, as defined in ¶1.15 hereof.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all remaining interest or right of Defendants or their insurers in or to the

Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶¶8.5-8.7 hereof unless Lead Counsel and counsel for Defendants on behalf of their respective clients mutually agree in writing to proceed with the Stipulation.

8.3    The Lead Plaintiff and each of the Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) calendar days of: (a) the Court's denial of the request to enter the Notice Order; (b) the Court's denial of the request to approve the Settlement; (c) the Court's denial of the request to enter the Judgment; (d) the date upon which the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked; or (e) the failure of the Effective Date to occur for any reason.

8.4    Airbus shall have the option to terminate the Settlement in the event that Persons who purchased more than a specified number of Airbus Securities during the Class Period choose to exclude themselves from the Class ("Opt-Out Threshold"), as set forth in a separate agreement (the "Supplemental Agreement") between Lead Plaintiff and Defendants, which is incorporated by reference into this Stipulation.  The Settling Parties shall not file the Supplemental Agreement with the Court unless instructed to do so by the Court.  The Opt-Out Threshold may be disclosed to the

Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible to maintain the Opt-Out Threshold as confidential consistent with the practices of the Court.

8.5    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, then within ten (10) business days after written notification of such event is sent by Defendants' Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less any expenses and costs reasonably and actually incurred pursuant to ¶2.8 and/or ¶2.9 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from counsel for Airbus.  At the request of Airbus' counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from Airbus' counsel or insurers that paid the Settlement Amount.

8.6    In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of March 15, 2022.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.8-2.10, 8.3, 8.5-8.7, 9.4-9.6 hereof, shall have no further force and effect with respect to the Settling Parties and

shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order, including any order related to class certification, entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be deemed to return to their status as of March 15, 2022. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall constitute grounds for cancellation or termination of the Stipulation.

8.7    If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed for Notice and Administrative Expenses and Taxes and Tax Expenses pursuant to ¶¶2.8-2.9 hereof. In addition, any expenses already incurred and properly chargeable pursuant to ¶2.8 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.10 and 8.5 hereof.

## 9.    Miscellaneous Provisions

9.1    The Settling Parties (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties and their counsel agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, and the Judgment will contain a statement that during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith at arm's-length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.3     Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as an admission

of, or evidence of, any fault or omission of any of the Released Parties; or (c) is or may be deemed to be or may be used as an admission or evidence that any claims asserted by Lead Plaintiff were not valid or that the amount recoverable was not greater than the Settlement Amount, in any civil, criminal or administrative proceeding in any court, administrative agency, proceeding or other forum or tribunal. The Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

9.4    The Released Parties are intended third-party beneficiaries of this Stipulation, and this Stipulation may be enforced by such Persons.

9.5    Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential.

9.6    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

9.7    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.8    This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

9.9    This Stipulation shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely those claims and disputes, including in the Litigation, and as more fully described herein.  If any provision of this Stipulation shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

9.10   The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.11   No waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.  No

waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

9.12    The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto and no representations, warranties or inducements have been made to any Settling Party concerning the Stipulation or its exhibits or the Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

9.13    Neither the Class Members nor Defendants shall be bound by the Stipulation if the Court modifies material terms thereof; provided, however, that it shall not be a basis for Class Members to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Authorized Claimants, or the Plan of Allocation is modified on appeal.  Nor shall it be a basis to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses or the distribution of the Net Settlement Fund.  Notwithstanding any such modification of the terms or Plan of Allocation or the Stipulation with respect to attorneys' fees or expenses, Defendants and Defendants' insurers shall be entitled to

all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds in addition to the Settlement Fund.

9.14   Lead Counsel, on behalf of the Class, are expressly authorized to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class that they deem appropriate.

9.15   Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereto hereby warrants that such Person has the full authority to do so.

9.16   All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by UPS (charges prepaid); or (iii) five (5) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Lead Plaintiff or to Lead Plaintiff's Counsel:

> Brian O. O'Mara
> Robbins Geller Rudman & Dowd LLP
> 655 West Broadway, Suite 1900
> San Diego, CA 92101
> bomara@rgrdlaw.com

If to Defendants Airbus, Guillaume M.J.D. Faury, Tom Enders, or Dominik Asam, or Airbus's or Guillaume M.J.D. Faury, Tom Enders, or Dominik Asam's Counsel:

> D. Scott Carlton
> Paul Hastings LLP
> 515 South Flower Street, 25th Floor
> Los Angeles, CA 90071
> scottcarlton@paulhastings.com

If to Defendant Harald Wilhelm or Harald Wilhelm's Counsel:

> Andrew M. Levine
> Debevoise & Plimpton LLP
> 919 Third Avenue
> New York, NY 10022
> amlevine@debevoise.com

9.17   The Stipulation may be executed in one or more counterparts, including by signature transmitted by email in PDF format.  All executed counterparts and each of them shall be deemed to be one and the same instrument.   A complete set of executed counterparts shall be filed with the Court.

9.18   The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

9.19   Subject to entry of the Judgment, substantially in the form of Exhibit B hereto, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to

the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.20    The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New Jersey, and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New Jersey without giving effect to that State's choice-of-law principles.

9.21    Pending approval of the Court of this Stipulation and its Exhibits, all non-settlement-related proceedings in this Litigation shall be stayed and all Members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Parties.

9.22    Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated May 20, 2022.

DATED:  May 24, 2022

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY (admitted *pro hac vice*)
BRIAN O. O'MARA (admitted *pro hac vice*)
STEVEN M. JODLOWSKI (admitted *pro hac vice*)

s/ Brian O. O'Mara
BRIAN O. O'MARA

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
bomara@rgrdlaw.com
sjodlowski@rgrdlaw.com

Lead Counsel for Lead Plaintiff

CARELLA, BYRNE, CECCHI, OLSTEIN,
   BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

Liaison Counsel for Lead Plaintiff

DATED:  May 24, 2022              PAUL HASTINGS LLP

                                  _____
                                        s/ Chad J. Peterman
                                       CHAD J. PETERMAN

                                  CHAD J. PETERMAN
                                  BARRY G. SHER (admitted *pro hac vice*)
                                  200 Park Avenue
                                  New York, NY  10166
                                  Telephone:  212/318-6000
                                  212/319-4090 (fax)
                                  chadpeterman@paulhastings.com
                                  barrysher@paulhastings.com

                                  ROBERT D. LUSKIN (admitted *pro hac vice*)
                                  NATHANIEL B. EDMONDS (admitted *pro
                                  hac vice*)
                                  2050 M Street NW
                                  Washington, DC  20036
                                  Telephone:  202/551-1705
                                  202/551-1700 (fax)
                                  robertluskin@paulhastings.com
                                  nathanieledmonds@paulhastings.com

                                  D. SCOTT CARLTON (admitted *pro hac vice*)
                                  515 South Flower Street
                                  Twenty-Fifth Floor
                                  Los Angeles, CA  90071
                                  Telephone:  213/683-6000
                                  213/627-0705 (fax)
                                  scottcarlton@paulhastings.com

                                  Attorneys for Defendant AIRBUS SE,
                                  GUILLAUME M.J.D. FAURY, and TOM
                                  ENDERS, DOMINIK ASAM

DATED:  May 24, 2022                    DEBEVOISE & PLIMPTON LLP

s/ Matthew J. Petrozziello
MATTHEW J. PETROZZIELLO

ANDREW M. LEVINE (admitted *pro hac vice*)
MATTHEW J. PETROZZIELLO
919 Third Avenue
New York, NY 10022
212/909-6069 (Levine)
212/909-6854 (Petrozziello)
212/909-6836 (facsimile)
amlevine@debevoise.com
mjpetrozziello@debevoise.com

STEPHAN J. SCHLEGELMILCH (admitted *pro hac vice*)
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
202/383-8154 (Schlegelmilch)
sjschlegelmilch@debevoise.com

Attorneys for Defendant HARALD WILHELM